### JAMES T. WARD AND OTHERS v. JOHN H. CONNER.

1. The act of August 30, 1856, (Paschal's Digest, Articles 4573, 4574, 4575,) did not repeal the seventeenth section of the act of December 14, 1837, (Id., Art. 4526,) nor invalidate surveys made in the field on genuine certificates and without prior or contemporaneous entries in the surveyor's office. The proviso to the first section of the act of August 30, 1856, (Id., Art. 4573,) recognizes the seventeenth section of the act of December 14, 1837, as in full force.

2. The concluding clause in Article 4573, to the effect that the survey shall not have preference over a prior location or entry, is nothing more nor less than a declaration that either a survey actually made or a file in the surveyor's office is a legal preliminary step towards acquiring title to public land; and that whoever first takes either of those steps acquires the right to the land.

3. The view above taken is further confirmed by the second section of the act of 1856, (Paschal's Digest, Art. 4574,) which contemplates that conflicts will arise between such files and surveys, to be determined by the surveyor on the facts of the case, and that the land is to be awarded to the claimant who has priority in point of time.

4. *Held*, therefore, that it was error to exclude competent evidence offered by a defendant to prove that before the plaintiff entered the land in the surveyor's office, he, the defendant, had appropriated it by a survey in the field on a genuine certificate.

APPEAL from San Saba. Tried below before the Hon. E. H. Vontress.

This case was adjudicated in the court below at the Fall term, 1860. As it elicits a decision by this court of an important question in the law respecting appropriations of the public lands,

and one not previously and expressly determined, it is deemed well to present a full report of it.

The action was trespass to try title, and Conner, the appellee, was the plaintiff below. The following statement of the case is taken from the brief of the appellant's counsel, but is not the less correct on that account.

The plaintiff in the court below claimed the land sued for by virtue of his file, made on the twenty-first of July 1857, on 480 acres of land by virtue of a genuine land certificate. The file was made in the district surveyor's office of Travis land district. The file was kept in force by a mandamus against the surveyor. In October 1859, a survey was made in accordance with the file of July 21, and the field notes duly returned, approved, recorded, and certified to the General Land Office. At the date of the file, twenty-first of July, 1857, the records of the office of the Travis district surveyor showed no conflicting location, either file or survey.

Plaintiff charged that defendants on the twenty-seventh of August, 1857, fraudulently procured to be entered on the records of said surveyor's office three surveys conflicting with his (plaintiff's) file, viz: First survey, No. 732, by virtue of first-class certificate No. 263, issued by the board of land commissioners of Nacogdoches county on the tenth of February, 1838, to James Bradshaw; second survey, No. 733, by virtue of duplicate certificate for one labor of land, issuod to Sarah Miles, by the Commissioner of the General Land Office, on the twenty-sixth of September, 1854; and third survey, No. 734, by virtue of bounty warrant, issued to the heirs of Wm. B. Miles, on the fifteenth of February, 1854, for 320 acres of land. That the certificates by virtue of which said surveys were made, were not presented to the surveyor at the time the surveys were made. That said certificates were not applied to said surveys until after the date of his, plaintiff's file; and that no legal surveys were made for

defendants on the land in controversy, until long after the twenty-first of July, 1857, the date of his, (plaintiff's) file. That the defendants colluded with L. H. Luckett, the said district surveyor of Travis land district, and so procured the approval and return to the General Land Office of said surveys. That the said Luckett was paid the sum of one hundred dollars therefor.

The prayer of plaintiff asked that said surveys be canceled, for judgment for the land, and for costs, etc.

The defendants pleaded not guilty, and disclaimed as to all the land included in plaintiff's file and survey, which does not conflict with their said surveys, Nos. 732, 733 and 734. The amount o conflict with survey No. 732 being 154 acres; amount of conflict with survey No. 733 being 89 acres; and amount of conflict with survey No. 734 being 88 acres, leaving 149 acres to which the disclaimer extends. Defendants further set up the three surveys named in the petition, viz.: 732, 733 and 734 as valid appropriations of the land included therein; that said surveys were made on the eighteenth of July, 1857, by virtue of genuine certificates on vacant public domain; that the surveys were made by L. H. Luckett, district surveyor, three days before the date of the file of plaintiff; that the actual surveys on the eighteenth of July appropriated the land; and that plaintiff's file on the twenty-first of July, so far as it conflicted with the said surveys, so made on the eighteenth, was void and conferred no title; that the said surveys No. 732, 733 and 734, by virtue of said valid certificates, were set up as a valid outstanding title to the land included therein. Defendants further alleged that plaintiff had notice that the said land was surveyed already at the time, and before his file on the twenty-first of July.

The plaintiff proved title to certificate; file by virtue thereof on twenty-first July, 1857, kept in force by a mandamus against the district surveyor of Travis land district; survey in October, 1859; approval and recording of field notes, and that they were certified to the Genaral Land Office.

The defendants offered in evidence a certified copy from the General Land Office, of certificate No. 263, issued to James Bradshaw, on the tenth February, 1838, and field notes of survey No. 732, made on the eighteenth of July, 1857, by L. H. Luckett, district surveyor of Travis land district, (in which the land lies,) approved and recorded in the office of said land district on the seventeenth of August, 1857, to the introduction of which plaintiffs objected, because at the time of the approval and registration of said field notes of said survey, in the district surveyor's office, the land had been filed upon by plaintiff, which objection the court sustained, and the survey was excluded.

The certificate of the Commissioner of the General Land Office, as to genuineness of said certificate to James Bradshaw, No. 263, was excluded as irrelevant.

Defendants then offered patent for said land, in name of James Bradshaw, of date September 19, 1857. To the patent plaintiff objected, for similar reasons urged against the survey—because patent issued subsequent to plaintiff's file. The objections to the patent were sustained, and the testimony excluded.

Defendants then offered certified copy from the General Land Office, of duplicate H. R. certificate of Sarah Miles, for one labor of land, issued by the Commissioner of the General Land Office, September 26, 1854, and also of field notes of survey No. 733, made July 18, 1857, of one million square varas, made by virtue of said certificate, approved and recorded in the district surveyor's office, August 27, 1857. All of which was ruled out, because it was objected that the registration and approval of said surveys were subsequent in point of time to the file of plaintiff.

The certificate as to genuineness was ruled out as irrelevant.

Defendants offered certified copy of the field notes of survey No. 733, from the district surveyor's office, surveyed July 18, 1857, showing that the survey was approved and recorded and the

original deposited in the General Land Office, August 28, 1857; which was ruled out on same grounds as the certified copy from General Land Office, viz. : because, at the time of their approval and recording in the district surveyor's office, plaintiff's file had been made.

Defendants then offered certified copy from General Land Office of certificates to heirs of William B. Miles, of date February 15, 1854, and of field notes of survey No. 734, for 320 acres, made by virtue of said certificate on the eighteenth of July, 1857, by L. H. Luckett, district surveyor of Travis land district, approved and recorded the twenty-sixth of August, 1857; which was objected to by the plaintiff, because, before the date of the approval and recording thereof, his (plaintiff's) file had been made; which objection was sustained.

Special act of the Legislature, authorizing the issuance of said certificate, was excluded as irrelevant.

The certified copy of said survey No. 734, from the district surveyor's office, showing approval, etc., and that the original of field notes was deposited in the General Land Office on the twenty-eighth of August, 1857, was excluded on same grounds as copy from General Land Office.

Defendants then offered the depositions of R. F. Luckett, that witness was deputy for his brother, L. H. Luckett, district surveyor of Travis land district, and had charge of the office on the twenty-first of July, 1857; received and recorded the entry or file of plaintiff, by virtue of scrip issued to McKinney and Williams, and witness "told Conner that the land he filed on had been surveyed by his brother, L. H. Luckett, district surveyor of Travis land district, prior to this; but that the field notes had not been returned to the office, and that his (the said Conner's) file was not a legal file, it not being made in a square, as the law directed. Conner told witness that his brother, L. H. Luckett, was surveying in that section of country before he (Conner) left Camp Colorado;

that Conner came back to the office in a few days and asked witness whether he would let him withdraw his certificate and file from the office, which witness refused to let him do." To which plaintiff objected " because the same was insufficient to prove notice," which objection was sustained by the court.

The defendants then offered the testimony of L. H. Luckett: That witness was district surveyor of Travis land district from April or May, 1857, to the end of said year; that he made, in July, 1857, and before the fourth of said month, surveys No. 732, 733 and 734, James Bradshaw for 640 acres No. 732; Sarah Miles, on survey No. 733, for one labor ; Wm. B. Miles on 734, for 320 acres; that Mercer, one of the defendants, handed him the certificate ; that witness, as special deputy district surveyor of Coleman county, made survey for John H. Conner in October, 1859.

The conflict with No. 732 is 154 acres, with survey No. 733 is 89, and with survey No. 734, 88 acres. Witness gives a plot of the surveys. The survey of Conner is for 480 acres. Witness told the defendants Gooch, Ward and Mercer, in reference to the James Bradshaw certificate, for a league and labor, that he, witness, required a certificate of its genuineness from the Commissioner of the General Land Office, before a survey could be made on it, and that such a certificate would have to be obtained by them. They preferred a survey should be passed up to the General Land Office by part of said league and labor certificate, instead of the 640 certificate, in case all were not needed, (four certificates had been handed witness, one for league and labor, one for 640 acres, one labor, and one 320 acre certificate,) and in talking about the matter they said they would get the certificate from the General Land Office as soon as they could, and then, if I could apply it, (the Bradshaw certificate,) they would prefer it. I consented to make the surveys for them, and afterwards to change the date of the surveys to after the date of the certificate from the General

Land Office. The parties all seemed interested in the surveying.

To the testimony of L. H. Luckett the plaintiff objected as irrelevant, save as to show the extent of the conflict and land included in Conner's file, to which the disclaimer applies; which exception the court sustained, and excluded the testimony. The defendants duly reserved exceptions to all the rulings excluding their evidence.

The defendant's evidence being thus excluded, the verdict and judgment were for the plaintiff.

The defendants moved for a new trial, but it was refused. They appealed, assigning for error the several rulings excluding their evidence, and the refusal of the new trial.

It should have been stated that the land lay in the then unorganized county of Coleman, which was attached to San Saba for judicial purposes.

*A. S. Walker*, for the appellants.—Briefly, this case shows a contest between actual surveys made on the eighteenth of July, 1857, and a location of the same land, by file thereon, on the twenty-first of July, three days subsequent to the surveys. Other points are made by the pleadings, but the evidence is confined to the above facts. No questions as to the sufficiency or legality of the surveys of appellants arise, nor is the diligence of the return and registration of the surveys in the proper offices at all questioned. That the diligence required by law was faithfully exercised by appellants the facts offered in evidence abundantly show.

The evidence of plaintiff's file and subsequent proceedings towards perfecting his title, were admitted by the court, but all testimony whatever, offered by defendants, (who are appellants,) of the prior surveys, although competent proof was tendered, was excluded on the assumption, as shown by the bill of exceptions, that the land included in the surveys offered had already been shown to have been located.

The court in excluding the testimony of defendants assumes the proof of plaintiff as made—in fact, as unassailable; and while excluding, looks to the testimony excluded, and determines that it is inconsistent with the title of plaintiff (the identical question at issue), and for that reason excludes it. The court does not permit the facts as to the outstanding title to go to the jury, because by so doing the title of plaintiff would be attacked, when the court has already determined that it is a Gibraltar, and he will not permit the perpetration of an act of folly so egregious as an attack upon this fortress would be. Such, it is respectfully submitted, must be the meaning of the objection sustained by the court. In effect the court assumes the validity of plaintiff's title, and rules out the testimony of defendants because it is inconsistent with the validity of plaintiff's claim.

I. It is urged by appellants that the superior outstanding title set up in their answer was a bar to plaintiff's recovery. The plaintiff "must recover on the strength of his own title, and not on the weakness of defendants." (See Styles v. Gray, 10 Tex. Rep, 504; Victory v. Stroud, 15 Tex. Rep. 373.) The answer sets out a superior outstanding title, the facts being prior surveys by virtue of genuine land certificates, properly-authenticated, with due diligence subsequent to the survey, and notice to the plaintiff thereof.

It is urged that testimony supporting these allegations was admissible. The testimony offered, and included in defendant's bill of exceptions, was, so far as to date and mode of surveys, identical with the allegations, and the testimony of L. H. Luckett, the surveyor, certainly showed, or tended to show, in support of the allegations, the existence of the surveys, the fact of actual surveys, with marked lines, etc, while that of R. F. Luckett tended strongly to show that plaintiff had notice of the surveys. It was error in the court to exclude the evidence of surveys and notice, etc.

II.   The act of the Legislature of August 30, 1856, recognizes two modes of appropriating public lands; first, by location or "entry" in writing, filed with the land certificate, or scrip, in the office of the district surveyor; second, by survey without entry, or in the words of the act, after prescribing the requisites of a valid entry and mode of making surveys, provides "that nothing in this act shall be so construed as to prevent holders of certificates or scrip from having the same surveyed without entry, but such survey shall not have a preference, or give any right over a location or entry of the same land previously made in the proper office."

It seems to us impossible to mistake this language.   Priority of time is made the test of superiority in a conflict of titles arising between the two modes pointed out—else why provide that such surveys shall not have preference over a location or entry previously made !   Why allow of surveys without entry or location if the land is still open to appropriation, by entry, etc., in the proper office ?   Is it not evidently the intention of the Legislature to recognize such surveys as valid appropriations of the public domain included therein, (they being valid in other respects—as made by virtue of genuine certificates or scrip, and duly returned and registered in the proper office in reasonable time,) but are careful at the same time to specify that the other mode of locating land was of equal validity—as an entry previously made shall not be affected by the survey ?

By Article 4526, Paschal's Digest, the surveyors, county and district, are required to survey all lands that may be legally pointed out to them under heavy penalties.   Why go through the solemn farce of providing so particularly for such surveys, if they have no validity until there is record evidence of their existence in the district surveyor's office?   If the entry is to take precedence over surveys made prior to the entry, then the whole legislation in relation to surveys, without entry, becomes useless.   But, aside

from Legislative action, an actual survey by virtue of a genuine land certificate, has been held a valid title. (See Howard v. Perry, 7 Tex. R., 529 ; Croft v. Raines, 10 Tex. R., 520 ; Hollingsworth v. Holshausen, 17 Tex. R., 43 and 44, and Hamilton v. Avery, 20 Tex. R., 635, etc.) Surveys by virtue of valid and genuine certificates, when returned to the proper office in a reasonable time, have always been regarded in Texas as titles, and valid from their date. This recognized custom seems to have been re-enacted by the Legislature in the act of August, 1856. There is nothing contradictory in the terms, and indeed the language of the act seems studiously to have been selected to place surveys on an equality with other modes of appropriating public land. If, therefore, the surveys of the eighteenth of July, pleaded by defendants, appropriated the lands included therein on that date, how could the entry of July the twenty-first affect them? The entry was not previously made.

III. But should an actual survey, legally made, not be held good against a subsequent location by entry ? Then, has not notice been had by plaintiff in this case ? Is not the testimony of R. F. Luckett sufficient to charge plaintiff with notice enough to put a reasonable man on his guard, and inquiry sufficient to lead him to the facts. He (R. F. Luckett) testified that he told Conner that the land he filed on had been surveyed by his brother, L. H. Luckett, district surveyor of Travis land district, prior to this. He further testified that Conner " told him that his brother, L. H. Luckett, was surveying in that section of country before he (Conner) left Camp Colorado. He further testified that Conner came back to the office in a few days and asked whether he would let him withdraw his certificate and file from the office, which witness refused to let him do.

As to law on notice, see Morris v. Byers, 14 Tex. Reps., 278 ; Lewis v. Durst, 10 Tex. Reps., 416, 417 and 418, and Gilbeau v.

Mays, 15 Tex. Reps., 410.   Should notice be required, it is urged that the court is not the party to judge of the testimony when offered ; that is a question for the jury.

The court excludes the testimony tending to fix notice on the plaintiff, by proof of the actual surveys set out in defendant's answer and offered in proof, and of the conversation between plaintiff and R. F. Luckett, at the time of the entry, on the twenty-first of July, for the express reason that the evidence is insufficient to make the proof.   This should have gone to the jury, as well as the facts of the title pleaded as superior outstanding title by the defendants.

*George W. Paschal* and *M. H. Bowers*, for the appellee.— The counsel for appellee submit the following points and authorities in support of the judgment :

First—The effect of ruling out all evidence of locations, the facts concerning which are fully set out in the bills of exceptions, and in the pleadings and other parts of the record, might at first seem to be error.   But it was only the judge's mode of determining upon the legal effect of the titles, which it was his duty to do. Had he admitted the junior title to be given in evidence, it would have been his duty, under his view of the law, to instruct the jury that the anterior title appropriated the land, and they must find for the plaintiff.   And as it was the judge's duty to determine the legal effect of all written documents, it would have been the duty of the jury to obey.   (Fort v. Barnett, 23 Tex., 464.)

To exclude the evidence acted like sustaining a demurrer to the defense ; and the very question is presented, was the judge right in his interpretation of the law ?   For if he was, the defendant cannot justly complain of the ruling.

Second—The appellant virtually admits, in his argument, that if the land was vacant, the location and subsequent survey appropriated the land; and hence, the reiteration of the old rule in

Styles v. Gray, 10 Texas, 504, and Victory v. Stroud, 15 Texas, 373, to the effect that the plaintiff must recover on the strength of his own title, can have no place. The mere location of a valid certificate has been strong enough title to enable the plaintiff to recover against any form of title ever since the enactment of our statute of limitations of the fifth of February, 1841, section twenty-three. (Paschal's Annotated Digest, Art. 5003; Hartley, Art. 3230.) The separation of this section from its context by Mr. Hartley, followed up by other compilers, has almost caused a forgetfulness of its history and context.

The fifteenth section of the statute of limitations defined one of the colors of title to be, "when the party in possession shall hold the same [land] by a certificate of headright, land warrant or land scrip, with a chain of transfer down to him, her or them in possession." (Paschal's Annotated Digest, p. 766, Art. 4622; and note 1031.) The equitable title under the sovereignty of the soil, accompanied by possession in fact, was thus made a shield of defense. The defense is upon an equitable, not a legal title. (Doswell v. DeLanza, 20 How., 32; Sheirburn v. DeCordova, 24 How., 423; Paschal's Digest, notes 1031, 1149, pp. 767, 895, 896.) It followed as a sequence, and it was engrafted into the act as an amendment, "that all certificates for headrights, land scrip, bounty warrants, or any other evidence of right to land, recognized by the laws of the government, which have been located or surveyed, shall be deemed and held as sufficient title to authorize the maintainance of actions of ejectment, trespass, or any other legal remedy given by law." (Paschal's Annotated Digest, Art. 5303.) The location or survey is thus first made a "color of title" for the purpose of defense under a plea of limitations with three year's possession. And it is made a "legal title" in the hands of the plaintiff, against any character of title not superior in equity. And the court, following the decisions in Kentucky and all the other American States, has adopted the principle,

that a location, if sufficiently specific, appropriated the land, as well before as after a survey. (Hollingsworth v. Holshousen, 17 Texas, 44.)

And that the elder location will override the older survey upon a younger location. (Hollingsworth v. Holshousen, 17 Texas, 44; and see Lewis v. Durst, 10 Texas, 415, and the cases collected in Paschal's Annotated Digest, note 1150, p. 896.)

The plaintiff's location was followed up by a timely survey; and until the survey, the plaintiff admits that it was kept alive by a suit for a mandamus. (Edwards v. James, 13 Texas, 53, 54; Paschal's Digest, note 1009, pp. 751, 752.)

Third—The question is also admitted to be one of superiority of location under the first section of the act of thirtieth of August, 1856. (Paschal's Digest, Art. 4573, p. 752.) "The book of entries" required to be kept is not a new rule, but is only a repetition of the instructions of the commissioner, a full copy of which is now before this court in the case of Russel v. McLane. The commissioner had the right to give these instructions, and under them no location could be made until the certificate was filed and the entry made in the book. (Peacock v. Hammond, 6 Texas, 548, 549; and see Paschal's Digest, Art. 4522, note 997, p. 744; Art. 4543, note 1004, p. 749; Lewis v. Durst, 10 Texas, 417, 418; Williams v. Craig, 10 Texas, 438; Guilbeau v. Mays, 15 Texas, 416, 417.)

These authorities, as a whole, settle the principle that the Commissioner of the General Land Office had the right to require the book of entries; that the location in such book appropriated the land; and taken in connection with the case of Hollingsworth v. Holshousen, 17 Texas, 44, and others of that class, they settle that the entries or location, made in the book for that purpose, override the anterior location made without a survey. But where rights rest upon the construction of the statutes and decisions (the *lex non scripta*) there is often a necessity of remedial statutes.

XXXIII—36

Such is the character of the statute of the thirtieth of August, 1856. It but re-enacts the better practice under the old law. " Hereafter, each county and district surveyor in the State, shall keep in his office a well bound book as a register of entries, in which he shall register entries or applications for land in his county or district. He shall also, before registering an entry or application, require the applicant to file his land certificate or scrip, or other legal evidence of title to land, together with a written entry or application, particularly describing the claim to be surveyed, the date of the entry or application, and the land applied for, in his office, which he shall not allow to be taken from thence until the same is returned, together with the field notes to the General Land Office."

· The sense of this section cannot be explained away. It admits of no construction. The book shall be kept in his office as an archive; in that book he shall register all entries or applications for lands. But this he shall not do until the certificate shall be filed with a descriptive entry, dated and certain; all this in his office; and this *muniment* shall not be withdrawn. Here is a great question of public policy which might be violated by permitting field surveys without entry and filing. Observe too, that the survey is to be made by a copy of this descriptive entry, and " strictly in accordance with the same."

The appellants seeks to escape these positive requirements of the law by assuming that the locator may employ another mode; that is, that he may appropriate the land under the " *provided*, that nothing in this act shall be so construed as to prevent holders of certificates or scrip from having the same surveyed without entry." And so he may, even by a prior survey, or he or the surveyor may adopt an old abandoned survey, or a survey of a void or cancelled title, as is the constant practice. " But such survey shall not have a preference, or give any right over a location or entry of the same land previously made in the proper office." Previously to what?

Why, to the return of the survey and the filing of the certificate in the district surveyor's office. Then, and not until then, the survey takes the place of the entry. Otherwise, this clause would repeal the whole object of the act, which cannot be supposed.

Fourth—The appellants, seeing the difficulty of positive law, seeks to interpolate or add the words " without notice," in the proviso. But it is answer enough that no such words are there, and they would be inconsistent with the objects and intention of the whole laws on the same subject matter, which must be construed as *pari materia*, the same law. (See Napier v. Hodges, Austin T., twenty-sixth of October, 1868, Paschal's Digest, Arts. 4562–4575.)

The object was to promote diligence, to allow contesting locations, to sustain the superior equity, and to forfeit the certificate of the rash locator. The only safe course of the appellants was, that when they discovered the previous entry, they should have refused to file their certificate. But they offered to . prove the strongest possible case for Conner, by showing that the surveyor refused to allow him to withdraw his locations. He could not do so, because he had already appropriated the land.

This statute is like the fourth clause of the statute of frauds. It is intended to prevent frauds, and hence the matter of notice cannot affect the right. (Grumbles v. Sneed, 22 Tex., 565 ; Lafferty v. Murray, 27 Tex., 372, 374, 376 ; Lott v. Bertrand, 26 Tex., 663 ; Paschal's Digest, note 909, pp. 652, 653.)

These cases are but cited as analogy. They relate to a clause of a statute about chattels, to be sure. But they show that when the statute is to prevent frauds, the " without notice " cannot be interpolated. And even as to the second section of our statute of frauds, which copies the twenty-seventh of Elizabeth in interpolating the " without notice " into the second clause, in Fowler v. Stonum, 11 Tex., 478, the court was overruling the whole current of English and American decisions, and defeating the very object

of the statutes, which allows the *loco penitentiæ* to the fraudulent vendor. The cases cited applied to the registration statutes, which had no application; that decision must be overruled. (See Paschal's Digest, note 906, p. 651.)

Nor is this a case to be affected by the statutes about registration, or the rule in Guilbeau v. Mays, 15 Texas, 410 to 417. All these statutes are intended to give constructive notice where the party has no actual notice.

It is not a question of notice of a previous location, for none could be made in the field, or even in the surveyor's house out of office hours, but only in " his office." (Fowler v. Hilburn, 21 Tex., 490.) Here the losing location was really prior in time, but it turned upon the point that it was no location at all.

So here, the most that could have been proved on Conner, (which must have been proved in that case) were acts which manifested an intention to locate. In Fowler v. Hilburn, the intention was manifested by an effort to locate at the surveyor's house—here the effort was in the woods. Notice of these facts could only be notice of intention. The fact that the surveyor or deputy surveyor was surveying the land could make no difference. The same would have been the result had it been any private person. Luckett does not pretend that there was an effort to locate the certificates with him. Indeed he required none of them. He only looked at them, returned them to Mercer, and then went to work to survey off the land. There was no question of priority about it, for there was no semblance of compliance with the statute. It is no effort to locate by designation, but to survey with a view to the location.

Notice of all these facts could not have affected Conner, but the statement of the deputy was insufficient for any purpose. He only told what he supposed to be true, but which was of no legal consequence, when there was proof that no evidence of such fact existed when Conner located.

The judgment was correct and we ask an affirmance.

*A. S. Walker*, for the appellants, in reply.—I. By what right was the court below, at any time prior to the closing of the evidence, to know what amount of testimony would be offered by the defendants? Until this was known, no action excluding legal evidence could be a correct rule.

II. If Conner's "file," "location" or "entry" of twenty-first of July, 1857, was not made on vacant public lands, no regularity of proceedings or diligence used would have ripened his "file" into a good title. The "file" and proceedings under it, as against the prior survey, would be invalid if such survey had appropriated the land. It is insisted, not that Conner was wanting in diligence, but that the land had been previously located by the surveys, etc.; which outstanding title should defeat plaintiff's action.

III. Article one of act of August 30, 1856, (Pas. Dig., 4573,) is the statute law governing "locations," "entrys" and "surveys." The act prescribes how "locations" and "entrys" shall be made. It also recognizes the old mode of appropriating land by "survey" without "entry," and provides "that such survey shall not have precedence or give any right over a location or entry of the same land previously made in the proper office." Is it not a necessary inference that such surveys shall have precedence, and shall give a right to the land, over a "location or entry" subsequently made? That the "survey" of July 18 shall have preference and shall give a right to the land over Conner's "location or entry" subsequently (July 21) made? Is a statute less a rule of action than a decision in the absence of statutory provision? If the written law furnishes the rule, why search for precedent?

The cited cases, Hollingsworth v. Holhousen, and Fowler v. Hilburn, were between claimants holding under "locations" or "entrys." In neither case was a "survey" made, prior to the "location" held invalid by the court.

IV. Without yielding that the survey of eighteenth July is an inferior title to the "location or entry" on twenty-first of

July, and while insisting that the "survey" had preference and gave a right to the land as against the "entry or location" subsequently made, still, if the legal effect of notice in analogous cases were applied, there would be no difficulty in this case, aside from the statute. If the subsequent locator (Conner) had notice of the prior "survey," his acts subsequent to notice were invalid and void as against the prior title or claim. (McGee v. Chadoin, Galveston term, 1867.)

Test the surveys shown by defendants, by the rule applied to Chadoin's title, and the outstanding title would be perfect.

V. "It is not allowable to interpret what has no need of interpretation." "If a statute is plain and unambiguous, there is no room for interpretation or construction." (Maxims for construction as given by Sedgwick in his Con. and Stat. Law, pp. 225, 231, 235; see cases cited, 14 B. Monroe, 89, Bosley v. Mattingley; 2 Cranch, 358, 399, Fisher v. Blight.)

MORRILL, C. J.—We are called upon to give a judicial construction to the act of thirtieth of August, 1856, entitled "An act prescribing the manner of entering land certificates or scrip, and to prohibit the lifting and floating the same." (Articles 4573, 4574 and 4575, of Paschal's Digest.)

More especially, the point arising in this case is whether the passage of this act, either expressly or by necessary implication, requires whosoever wishes to appropriate land by having the same surveyed and patented, "to file in the register of entries of the district surveyor a certificate or land warrant, together with a written entry or application, particularly describing the land," etc., and necessarily repeals the portion of the seventeenth section of the land law of 1837, (Art. 4526,) which provides that "any certificate shall be sufficient evidence to authorize any lawful surveyor to survey for any person holding such certificate any lands which he may point out."

The act of the thirtieth of August, 1856, is as follows:

"SEC. 1. Hereafter each county and district surveyor in the State shall keep in his office a well bound book as a register of entries, in which he shall register entries or applications for land in his county or district. He shall also, before registering an entry or application, require the applicant to file his land certificate or scrip, or other legal evidence of title to land, together with a written entry or application, particularly describing the claim to be surveyed, the date of the entry or application, and the land applied for, in his office, which he shall not allow to be taken from thence until the same is returned, together with the field notes, to the General Land Office; but the survey shall be made by a copy of the entry, and strictly in accordance with the same; *provided*, that nothing in this act shall be so construed as to prevent holders of certificates or scrip from having the same surveyed without entry. But such survey shall not have a preference, or give any right over a location or entry of the same land previously made in the proper office.

"SEC. 2. It shall not be lawful for such surveyor to allow the holder of any land certificate or scrip, or other legal evidence of title to land, to lift or float the same after entry, location, file or survey, when the same is not made upon land previously appropriated. But when a conflict of entries, files, locations or surveys occur, upon a proper showing of the facts, which may be by the certificate of one of his deputies, or from his own knowledge, he shall allow the party having his entry, file, location or survey of subsequent date, to lift so much thereof as shall be affected by such conflict.

"SEC. 3. Whenever an entry is made by virtue of a genuine certificate, upon any land which appears to be appropriated, deeded or patented, by the book of the proper surveyor's office, or records of the county court or General Land Office, the party making such entry shall abide by the same, and in the event that judgment

final shall be rendered against the right of the party making such entry to hold such land, he shall not have the right to lift or re-enter said certificate. But the same shall be forfeited, and so de-clared to be by the judgment of the court; *provided*, that nothing in this act shall be so construed as to affect entries or locations heretofore made."

The constitutional provision, Art. 7, § 24, which requires the "object of a law to be expressed in its title," is imperative upon us to construe the object and effect of this act to be to designate the "manner of entering land certificates, and to prohibit the lifting and floating the same."

The two objects contemplated are definitely set forth, and although there were local customs of filing certificates in the manner pointed out by this act, yet these customs never had the sanction of law as far as we know, and it would not therefore be inconsistent with the caption of the act to say that the object of the Legislature was to enable a person to point out the land to be surveyed in the *surveyor's office*, as well as by actually going to and upon, and pointing out the land.

When the land law first went into effect, as the whole country was generally vacant and unappropriated land, the only practical way of designating the particular portion to be surveyed was by personally pointing out to the surveyor the land desired, since there were neither notorious or recorded objects by which the land could be designated. It is quite probable also at the present time, in the unsettled portions of the State, that the only practical and definite method of designating a tract of land by metes and bounds is by a visible pointing it out.

But what seems to place the question beyond doubt, that the act of 1856 is not intended to repeal the act of 1837, is the proviso in the first section, which declares "that nothing in this act shall be so construed as to prevent holders of certificates or scrip from having the same surveyed without entry." This pro-

viso not only does not repeal the section 17, of the act of 1837 before referred to, but expressly recognizes it to be in full force. The further proviso, that the "survey shall not have a preference or give any right over a location or entry of the same land previously made in the proper office," is nothing more or less than saying that either a survey, actually made, or a file in the district surveyor's office, is a legal preliminary step towards acquiring title to the land, and that whoever shall be the first in taking either of these methods, has a superior right to the land surveyed or filed upon as the case may be.

The provisions of the second and third sections of the act confirm the opinion we have expressed relative to the first section. The second section contemplates that there will necessarily arise cases like the one before the court; that different parties will make a file in the surveyor's office, and have a survey without entry, and also makes provision relative to the duty of the county surveyor in such cases, viz.: that he shall ascertain, from the facts in the case, the party which is prior in time, and award to him the land. We therefore consider that the judge erred in not permitting the testimony to be given, showing which party was prior in point of time in the inception of his title to the land in controversy.

Wherefore the judgment is reversed and cause remanded.

Reversed and remanded.