GEO. F. ALFORD ET AL. v. THALES McDONALD ET AL.

(March 19, 1880.)

TRESPASS TO TRY TITLE — LAND PATENTED BY MISTAKE TO PARTY
NOT ITS OWNER — TRUST.— Where a surveyor made a survey for
A. by virtue of a land certificate once owned by B., but in making
his return of the field-notes to the general land office he, by mis-
take, applied to them another certificate, the property of B.'s es-
tate, and, by like mistake, applied his certificate to a survey made
for the estate of B., said certificate differing one from the other
only in their numbers, and said surveys both having been patented
to the heirs of B., and A. having taken immediate possession of
the land surveyed for him and held it for years as his own with-
out adverse claim on the part of B.'s heirs, *held*, that under the
facts A. and his vendees, as against said heirs, were entitled to the
land surveyed for A.

APPEAL from McLennan county.    Opinion by QUINAN, J.

STATEMENT.— This is an action of trespass to try title in-
stituted 13th of July, 1870, by plaintiff (appellant), admin-
istrator of G. G. Alford, deceased, and the heirs of deceased,
to recover of McDonald nine hundred and sixty acres of
land in McLennan county, patented to the heirs of G. G.
Alford, deceased. The case substantially set out in the
pleadings of the defendants, and very clearly established
upon the trial, was, so far as it is material to the contro-
versy, as follows:

In the year 1852 Joseph Inman was the owner of two
certificates for land of six hundred and forty acres each, of
what is known as the Toby scrip. These certificates were
numbered 353 and 358. These had at one time belonged
to G. G. Alford. At the same time Inman, who was then
administrator of the estate of G. G. Alford, had in posses-
sion, as belonging to said estate, another certificate of the
Toby scrip for six hundred and forty acres, numbered 354.
These certificates were distinguishable one from the other
only by their numbers.

Inman placed these three certificates in the hands of the
locators and surveyors Rice and Lewis, who were the dep-

uty surveyors for Robertson land district, for location and survey, with instructions to survey the lands separately, that is, the one thousand two hundred and eighty acres belonging to Inman by itself, and that of the estate separately; "that the surveyor did locate and survey for Inman one thousand two hundred and eighty acres of land in a square form as one survey, and intended to put his certificate upon it and thought he had done it;" that the surveyor did locate and survey the tract of six hundred and forty acres (called the upper tract) for the estate of Alford, and intended to place the certificate belonging to the estate upon it and thought he had done so; that he, the surveyor, always after that regarded the lower tract (the one thousand two hundred and eighty acres) as Inman's, and the upper (the six hundred and forty acres) as the estate's, and never heard any one claim otherwise until lately.

J. H. Roberts, a witness, testified that he assisted in making the surveys; that the understanding at the time was that the lower survey was made for Inman, and the upper for the estate of G. G. Alford; that Inman always claimed and controlled the lower tract as his own from the time of location, and never heard it claimed by any one but him and those claiming under, until this litigation commenced. He stated that he lived near the land, was Inman's agent for the land, and sold it for him to McDonald, the defendant. The two certificates were surveyed together as one survey.

It conclusively appears, however, that the surveyor, on returning the field-notes of the surveys to the land office, by mistake applied the certificate No. 354, which belonged to the estate of Alford, together with the certificate No. 358, which belonged to Inman individually, to the one thousand two hundred and eighty acres which he had located and surveyed for Inman, and also, by mistake, applied the certificate No. 353, belonging to Inman, to the upper tract of six hundred and forty acres, located and surveyed for the estate of Alford.

In March, 1857, Inman sold to McDonald nine hundred and sixty of this one thousand two hundred and eighty acre tract (three hundred and twenty acres of which appears to have been conveyed to the locator), and executed his bond to make him a title, describing the land as nine hundred and sixty acres, part of the tract of one thousand two hundred and eighty acres located by R. B. Lewis, etc., by virtue of two Toby land scrip certificates, title to the same having been decreed to me, etc. McDonald paid $1,920 for the land. After this sale the patents issued.

The patent for the six hundred and forty acre tract is dated the 5th of December, 1857, and described the land as located by virtue of Toby land scrip No. 353.

The patent for the one thousand two hundred and eighty acres is dated the same day and describes the land as located by virtue of Toby land scrip Nos. 354 and 358 in one survey.

Both patents issued to the heirs of G. G. Alford. It is not shown when they were taken from the land office. McDonald, immediately upon his purchase of the land, took possession and has lived upon it ever since, paying the taxes, and has made valuable improvements. The heirs of Alford appear to have rendered the six hundred and forty acre tract for taxes for some years. It is still uncultivated land. It has always been known as the Alford tract.

There is no difference in value in the upper and the lower tracts. The six hundred and forty acre tract is perhaps the best land, the other way now, but not when located, being in a better locality. The one thousand two hundred and eighty acre tract is incapable of a fair division into two equal tracts. The defendant filed with his answer a release to the heirs of Alford for all claim to the upper six hundred and forty acre tract. They prayed to be quieted in this title and for general relief.

The cause was submitted to the judge, a jury being waived, and judgment was rendered for the defendant that the equitable title to the land was in him and vesting in

12

him the legal title to the same. The plaintiffs appealed. The assignments of error are: 1. That the court erred in overruling plaintiffs' exceptions to defendants' answers. 2. In rendering judgment for defendants on the law and evidence in the case.

OPINION.— From this statement of the case it appears manifest to us that these assignments are not well taken, and that there is no error in the judgment. By the delivery of the two certificates, Nos. 353 and 358, to the surveyor for location, and the actual survey under them, for him, by the surveyor of the one thousand two hundred and eighty acres in one body, Inman acquired an inchoate right to the land. It was a valid appropriation of it, capable of being carried into a patent. So, also, by the location and survey of the other six hundred and forty acres for the estate of Alford, that land was appropriated to them. Howard *v.* Perry, 7 Tex., 275; Hamilton *v.* Avery, 20 Tex., 635; Hollingsworth *v.* Holshousen, 17 Tex., 43; Word *v.* Conner, 33 Tex., 568.

The mistake of the surveyor, in the application of his field-notes upon the return to the general land office, should not have the effect of divesting or changing the rights of the parties. Nor do we think could Alford's heirs by reason of this mistake acquire any right to hold Inman's land. It was a mistake which could have been rectified at the land office before the issuance of the patents, had it been discerned in time. Or even after the issuance of the patents the commissioner of the general land office could upon proper proof cancel the patents and correct the error. The issuance of the patent to them under the circumstances of the case, though it vested in them the apparent legal title, surely they cannot be permitted to enjoy the beneficial interests in the land without violating the plainest principles of equity. Doswell *v.* De La Lanza, 20 How., 29; Urquhart *v.* Burleson, 6 Tex., 511; Coleman *v.* Worley and wife, 3 Dana, 486.

It is such a case in which, as is said in Hill on Trustees, 144, "The court will raise a constructive trust and fasten it upon the conscience of the legal owner so as to convert him into a trustee for the parties who, in equity, are entitled to the beneficial enjoyment." So in Perry on Trusts, page 159, and the cases cited, it is recognized as a settled rule in equity that where a deed is drawn by accident or mistake to embrace property not intended by the parties, equity will construe the grantee to be a trustee, and will execute the trust by reforming the deed or ordering a reconveyance. It would be against natural right to allow a person to hold property which he never intended to buy, and which has come to him by such mistake. See references above.

Here the defendant, McDonald, in perfect good faith bought and paid for this land, without knowledge or suspicion of any flaw in his title, before the issuance of the patent, and perhaps before the mistake in the change of the certificates or field-notes had occurred; he had lived upon the land for thirteen years before the institution of this suit without the least reason to think his title defective, rendering it for assessment year by year and paying taxes thereon; he has made permanent and valuable improvements; his possession has been public, open and continuous, and it is the very land which his grantor in 1872 had located, surveyed and become equitably entitled to hold. The form of the survey, the location of his improvements, is such as to preclude a division of the land. To divest him of his possession would work to him irreparable injury. On the other hand the plaintiffs have and hold in undisputed enjoyment the very land which was located and surveyed for the estate of the ancestor. It is proven to be at least as reliable as that located for Inman. They have suffered no injury. It would be manifestly unconscionable to permit them to take advantage of the mere mistake of a ministerial officer, whereby the legal title became vested in them, to deprive the defendant of the land he had purchased

from the equitable owner of it, paid for and improved, and now to acquire it for themselves. No court having respect to equity and regard to fair dealing, and clothed with jurisdiction to relieve in cases of fraud, accident or mistake, would suffer the perpetration of so manifest an injustice.

The judgment rendered was the proper judgment to render in the court below, and it must be affirmed.